MICKLE, Judge.
Appellants have consolidated their appeals from a jury verdict and final judgment finding the defendant, Jackson County (“County”), not liable in their consolidated negligence actions. The incident from which this case arose is a November 1987 collision of two vehicles driven by Jeffrey Howard and Sallie Ivey on a depressed section of two-lane County Road 162, on which a pool of water 25 feet long and 6 feet wide had formed. We reverse.the judgment and remand this cause for a new trial.
Appellants essentially alleged that the County’s failure to clip or slope the shoulders of County Road 162, to permit proper drainage, caused water to pool in the road at the location of the accident, thereby creating a dangerous condition; and that the County’s negligent failure to maintain the roadway in a reasonably safe condition, and failure to correct or warn of the dangerous condition, caused the accident. The County defended on the theory it was not negligent because the County Commissioners and County Administrator had no notice of the dangerous condition. In response to a request for admissions, the County admitted its responsibility for maintaining the shoulders of County Road 162 during the relevant period to, among other things, permit drainage of rain water from the pavement. The County conceded it had a policy in 1987 of periodically clipping the shoulders of paved county roads such as County Road 162 at least once a year, in part to allow water drainage from the roadway.
Appellants alleged error in the exclusion of testimony of their expert engineer, Parrish, whom the trial court found to be qualified as an expert in the areas of accident reconstruction and road shoulder maintenance. Parrish testified that grass is used to stabilize the shoulder of the roadway so that the shoulder does not erode. As the grass is mowed repeatedly over time, the mowed grass begins to mat. When it rains, roadway matter flows onto the shoulders, where the matted grass acts as a filter, causing the turf to build up. If the shoulders are not properly clipped or sloped, the turf build-up will impede the flow of rain water off the roadway, causing water to pond on the pavement.
Parrish testified that the turf build-up on the shoulder of the westbound lane of County Road 162 caused the water to pond on the night of the accident. The following question was asked:
Mr. Parrish, upon your examination at the scene of the accident, as well as the photographs you took, as well as the homicide photographs and consulting various material and data, do you have an opinion as to how long the turf build up condition existed before the accident in question?
The County objected and Parrish initially was not permitted to answer. The jury was excused and Parrish was asked to ex *322 plain how he had arrived at his opinion on the length of time of the turf build-up. He responded:
Judge, there’s a depression there that I analyzed with some care that has existed over a period of approximately four years. The reason I know this is because the cracks that are in the road where the pavement has gone down, are worn smooth. These are not cracks that occurred in the past year. This is not a heavily traveled road. The road was resurfaced in 1983, so it obviously happened after 1983, but very shortly after that time.
The reason that these cracks developed was water that is impounded on the road surface leaks around the side of the pavement and soaks into the ground and makes a mushy area underneath the pavement. In other words, where the limerock sub-base is, and then vehicles that come over it pound on it and in engineering we refer to this as “pumping.”
Upon the jury’s return, the trial court concluded that Parrish’s opinion that the cracking in the pavement would have taken four years to form could not be used to support an opinion that the turf build-up condition, the high road shoulder, had existed for about four years prior to the accident. Appellants maintain that the refusal to allow this specific opinion testimony constitutes prejudicial error. After carefully reviewing Parrish’s proffered testimony and considering the County’s arguments for affirmance on this issue, we have concluded that the trial court’s stated concerns about the logic and basis of Parrish’s opinion go to the weight, rather than admissibility, of the evidence. Howard Brothers v. Sotuyo, 472 So.2d 1264 (Fla. 1st DCA 1985); H. K. Corp. v. Estate of Miller, 405 So.2d 218, 219 (Fla. 3d DCA 1981) (expert witness’ testimony was properly admitted on basis that sufficiency of facts required to form an opinion normally would have to be decided by expert himself). The length of time that a dangerous condition exists is relevant to whether a defendant had constructive notice of the condition. Ayers v. City of Miami, 578 So.2d 302, 303 (Fla. 3d DCA), rev. den., 591 So.2d 180 (Fla.1991). A key defense at trial was that the County is not negligent because the County Commissioners did not have actual notice of the dangerous condition. The trial court should have permitted Parrish’s excluded opinion testimony regarding the period of turf build-up. See Sheckler v. City of Mount Dora, 395 So.2d 1188 (Fla. 5th DCA 1981) (finding exclusion of expert testimony to be reversible error); Nat Harrison Assocs., Inc. v. Byrd, 256 So.2d 50, 53 (Fla. 4th DCA 1971).
As to the issue regarding prior incidents, we find the proffered testimony of Taylor fails to meet the requirements of the test enunciated in Perret v. Seaboard Coast Line R. Co., 299 So.2d 590, 593 (Fla.1974) (evidence of prior accidents is admissible to show notice or existence of dangerous condition, provided incidents occurred under substantially similar conditions not too remote in time).
REVERSED and REMANDED for new trial.
JOANOS, C.J., and ALLEN, J., concur.